**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **MICHELLE HERNANDEZ**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. EP-19-CV-260-DB |
| | § | |
| **EMPIRE TODAY, LLC**, | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**TO THE HON. DAVID BRIONES, SENIOR UNITED STATES DISTRICT JUDGE:**

Comes now MICHELLE HERNANDEZ, Plaintiff, and files this Response to Defendant's Motion for Summary Judgment, and would show the following:

**INTRODUCTION**

Michelle Hernandez experienced a high-risk pregnancy.  Discrimination based on pregnancy is sex discrimination; and in the specific circumstances of this case, it is also disability discrimination.  Hernandez informed her supervisor, Rita Rae, of her condition.  Rae had an immediate negative reaction, telling Hernandez she had no sympathy for her.  Rae then began scrutinizing her work, pressured her to work overtime (which was outside of her job duties), increased her sales quota, imposed unwarranted discipline, pressured her to resign because of her pregnancy, and threatened to demote and to terminate her.  When Hernandez made a report to HR, her treatment did not improve; it got worse, as Rae threatened Hernandez with termination for making that report to HR.

Hernandez received maternity leave.  When she called to schedule her return, she was told she had been terminated, and for the first time told her leave was not actually approved.  The evidence is disputed regarding Rae's participation in this decision. Rae designated Hernandez as "non-rehirable," contradicting Defendant's policy. Defendant's HR representative later apologized, admitting that she should not have been terminated.

Pursuant to Local Rule CV-7(d)(1), the factual support for and evidence supporting this Response are contained in Plaintiff's Appendix, filed contemporaneously, including Plaintiff's Statement of Relevant Facts, cited herein as the "Facts." The evidence as a whole raises fact questions on this suit for discrimination and retaliation. Defendant's Motion for Summary Judgment should be denied.

1

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if the movant shows that there is no genuine issue as to any material fact, and it is entitled to judgment as a matter of law. FED.R.CIV.P. 56(a). A judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter, but to determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)*.* In resolving the motion, the Court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes. *Reeves v. Sanderson Plumbing Prods. Co.*, 530 U.S. 133, 150 (2000). The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in her favor. *Tolan v. Cotton*, 572 U.S. 650, 651 (2014). Courts "may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Id.* at 656. So long as the evidence is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in her favor, the Court must deny the motion. *Reeves*, 530 U.S. at 150.

"Because employment discrimination claims 'involve nebulous questions of motivation and intent,' summary judgment is generally an inappropriate tool for resolving these cases." *EEOC v. I-Sector Corp*., 2003 WL 29939, at *2 (N.D. Tex. 2003), *quoting Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 640-41 (5th Cir.1985); *Jackson v. Texas Forest Serv*., 194 F.Supp.2d 566, 569 (E.D. Tex. 2001) (same).

## DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT

### I. The TCHRA.

Plaintiff sues for sex and disability discrimination, and retaliation for opposing discrimination, under Chapter 21 of the Texas Labor Code, sometimes referred to as the Texas Commission on Human Rights Act (TCHRA). The TCHRA is intended to "secure for persons in this state . . . freedom from discrimination in certain employment transactions, in order to protect

their personal dignity;" and to "make available to the state the full productive capacities of persons in this state." TEX.LAB.CODE § 21.001(4), (5). It is liberally construed to promote these purposes. *NME Hospitals, Inc. v. Rennels*, 994 S.W.2d 142, 146 (Tex. 1999). An employer violates the TCHRA if, because of sex or disability, the employer discharges or takes other adverse action against an employee. TEX.LAB.CODE § 21.051.

There may be more than one cause of an employment decision. *Southwestern Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 615 (Tex. 2004). The "motivating factor" causation standard applies to discrimination suits under the TCHRA. TEX.LAB.CODE § 21.125(a). An employee is not required to prove that her protected status was the but-for cause, sole cause, or substantial cause of the employment action. *Quantum Chemical Corp. v. Toennies*, 47 S.W.3d 473, 480 (Tex. 2001). Instead, the employee only needs to show that her protected status was one motivating factor, even if other factors existed. *Id*.

The TCHRA also prohibits retaliation for reporting and opposing discrimination. TEX.LAB.CODE § 21.055. The but-for causation standard applies to a retaliation cause of action. However, the "but for" causation standard is not "sole cause". *Texas Dep't of Human Services v. Hinds*, 904 S.W.2d 629, 636 (Tex. 1995); *see Alaniz v. Zamora-Quezada*, 591 F.3d 761, 777 (5th Cir. 2009) ("'but for' cause is simply not synonymous with 'sole cause.'")

## II. Discrimination on the basis of pregnancy is sex discrimination, and on the facts of this case, is also disability discrimination.

Plaintiff contends that Defendant discriminated against her on the basis of her high-risk pregnancy. The TCHRA defines discrimination on the basis of pregnancy, childbirth, and related conditions as discrimination on the basis of sex. TEX.LAB.CODE § 21.106.

Plaintiff contends that discrimination based on her high-risk pregnancy is also disability discrimination, on the facts of this case. Defendant denies that Plaintiff was disabled. Determining

whether any person is disabled requires an individualized assessment.  *Deas v. River West, L.P.*, 152 F.3d 471, 478 (5th Cir. 1998).  It is therefore unsurprising that Defendant can point to cases in which other plaintiffs with high-risk pregnancies, on their specific facts, were not disabled.  Plaintiff does not dispute that pregnancy itself is generally not considered a disability.  *Border v. Nat'l Real Estate Advisors, LLC*, 2020 WL 1536187, at *5 (D. D.C. Mar. 31, 2020). But a pregnancy that results in an impairment that substantially limits a major life activity can be considered a disability.  *Id.* (holding plaintiff plausibly alleged that her high-risk pregnancy was a disability).

Under the TCHRA, the term "disability" is construed in favor of broad coverage. TEX.LAB.CODE § 21.0021(a)(1).  A disability means a physical or mental impairment that substantially limits at least one major life activity of the plaintiff.  *Id.* § 21.002(6).  Sitting is a major life activity.  *Id.* § 21.002(11-a).  Hernandez was substantially limited in her ability to sit.  (Facts ¶4). Reproductive functions are major life activities.  TEX.LAB.CODE § 21.002(11-a).  Hernandez had a high-risk pregnancy with gestational diabetes and high blood pressure.  (Facts ¶ 4).  Hypertension can be a disability under the ADA.  *Weed v. Sidewinder Drilling, Inc.*, 245 F.Supp.3d 826, 834 (S.D. Tex. 2017). The EEOC has recognized that gestational diabetes and pregnancy-related hypertension may be disabilities under the Americans with Disabilities Act.[1]  A reasonable trier of fact may find that Hernandez was disabled.

For ease of reference, this response refers to discrimination on the basis of Plaintiff's pregnancy.  Whether the discrimination against Hernandez on that basis is considered sex discrimination (by statute) or disability discrimination (based on the limitations imposed as a matter of fact), it is unlawful discrimination. TEX.LAB.CODE § 21.051.

---

[1] EEOC guidance on pregnancy discrimination, available at: https://www.eeoc.gov/pregnancy-discrimination

**III.** **Hernandez was subjected to a hostile work environment**.

Plaintiff contends that Defendant subjected her to a hostile work environment because of her pregnancy. The prohibition on discrimination is not limited to economic or tangible employment discrimination, and covers more than the "terms" and "conditions" of employment in the narrow contractual sense. *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998). Discriminatory harassment need not have an economic effect on the complainant's employment to create an actionable hostile work environment. *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). "The phrase 'terms, conditions, or privileges of employment' evinces a congressional intent 'to strike at the entire spectrum of disparate treatment of men and women' in employment," which includes requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (citation omitted).

Discriminatory harassment violates the law when it is so severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment. *Meritor Savings Bank,* 477 U.S. at 67. To show that harassment affects a term, condition, or privilege of employment, a plaintiff must show that the harasser's conduct is either "severe *or* pervasive," not both. *LaDay v. Catalyst Technology, Inc.*, 302 F.3d 474, 483 (5th Cir. 2002) (citation omitted, emphasis in original). To be objectively and subjectively offensive, the employee need only show that the environment was one that a reasonable person would find hostile or abusive, and that the employee in fact did perceive it that way. *Faragher*, 524 U.S. at 787. Whether discriminatory harassment exists must be judged by the totality of the circumstances. *Harris*, 510 U.S. at 23; *Meritor Savings Bank,* 477 U.S. at 69.

The evidence raises genuine issues of material fact as to whether Hernandez's supervisor, Rita Rae, subjected her to a hostile work environment because of her pregnancy. After learning of

her pregnancy, Rae was hostile, aggressive, abusive, harassing on an everyday basis. (Facts ¶ 11, 19). Rae would constantly come to Hernandez's work station and look at her negatively. (Facts ¶ 11). She took actions to make her work environment harassing and more burdensome, including requiring more hours; extra monitoring, scrutinizing her internet usage and emails; constant meetings and calling her to her office about her doctor's notes; and harassing and yelling at her for using the office internet to send emails to HR including doctor's notes, despite the fact that the HR office instructed her to send the doctor's notes. (Facts ¶ 11). Rae's negative conduct towards Hernandez was pervasive and occurred on a daily or near-daily basis. (Facts ¶ 11, 19). She would call her in her office two or more times a week, and would also come to her work station, to confront and threaten her. (Facts ¶ 19). She would come by Hernandez's work station daily to berate her. (Facts ¶ 19). She insisted that Hernandez work overtime, even though mandatory overtime was not part of the duties of Hernandez's position. (Facts ¶ 12-13). She drastically increased Hernandez's sales quotas, knowing Hernandez could not meet the new quotas during her pregnancy, in a transparent attempt to create a justification to terminate her. (Facts ¶ 14). She prepared unwarranted disciplinary documents. (Facts ¶ 17). She threatened to eliminate Hernandez's position, demote Hernandez, and terminate Hernandez, and urged Hernandez to resign. (Facts ¶ 13, 15, 16, 18). She even told Hernandez that she was actually terminated, before Hernandez pointed out that she had not terminated a male in an equivalent position. (Facts ¶ 18). Coworkers witnessed that Rae was upset and annoyed that Hernandez was going to doctor's appointments, and observed Rae harass Hernandez constantly over going to the doctor, and discriminate against and harass Hernandez because of her pregnancy. (Facts ¶ 11). Rae's conduct caused Hernandez to become very upset, causing her stress level to worsen and blood pressure to become elevated. (Facts ¶ 19). Hernandez considered Rae's conduct hostile and abusive, and any reasonable person in her position would have

found it hostile and abusive.  (Facts ¶ 20).

Defendant denies that Hernandez's pregnancy was the reason for Rae's harassment of her. In examining this issue, the pertinent question is not the content of the harassing remarks, but the reason for the hostile work environment. For example, conduct underlying a sexual harassment claim need not be overtly sexual in nature.  *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 565 (6th Cir. 1999).  Non-sexual conduct can constitute harassment "based on sex;" any unequal treatment of an employee that would not occur but for the employee's gender may, if sufficiently severe or pervasive, constitute a hostile environment that constitutes sexual harassment. *Id*.

The evidence easily raises fact issues allowing a jury to find that the reason Rae created the hostile work environment was Hernandez's pregnancy (and thus, her sex or disability).  Rae responded negatively when Hernandez told her that she was pregnant. (Facts ¶ 6).  She told her that she had three miscarriages in her life and could not have children, so she was not sympathetic to her condition.  (Facts ¶ 6). Prior to informing Rae of her pregnancy, Hernandez had not been harassed or had her work micromanaged.  (Facts ¶ 11).  The mistreatment began immediately after Hernandez told Rae of her pregnancy.  (Facts ¶ 10, 11).  Rae asked Hernandez to resign, telling her that "child issues" were not an excuse.  (Facts ¶ 16).  She told Hernandez to quit her job so she could deal with her pregnancy.  (Facts ¶ 16).  She told her that because of her high-risk pregnancy, it would be best if she quit because, she said, Hernandez clearly couldn't handle the position.  (Facts ¶ 16).

Based on the totality of the circumstances, the evidence raises genuine issues of material fact as to whether Rae subjected Hernandez to a severe or pervasive hostile work environment because of her pregnancy.  Defendant's motion for summary judgment should be denied.

**IV.    The termination of Hernandez's employment was discriminatory and retaliatory.**

      **A.    The *McDonnell-Douglas* framework of analysis.**

The evidence also raises fact questions for the jury as to whether Hernandez was terminated for discriminatory and retaliatory reasons. "There will seldom be 'eyewitness' testimony as to the employer's mental processes." *U.S. Postal Svc. Bd. of Governors v. Aiken*, 460 U.S. 711, 716 (1983). "Employers are rarely so cooperative as to include a notation in the personnel file, 'fired due to age,' or to inform a dismissed employee candidly that he is too old for the job." *Thornbrough*, 760 F.2d at 638. Because employers rarely admit discrimination, it must normally be proven using circumstantial evidence. *Id.* at 638, 641. Yet "[c]ircumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003).

In *McDonnell Douglas Corp. v. Green*, the United States Supreme Court articulated the well-tread path for proving discrimination and retaliation by circumstantial evidence. 411 U.S. 792, 802-04 (1973). The employee bears an initial burden of showing a prima facie case of discrimination or retaliation. The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for its decision. If it does so, the burden shifts back to the employee to rebut that explanation. If the employee brings forward evidence allowing the trier of fact to reject the employer's proffered basis for the employment decision as pretextual, or other evidence that the employee's protected status was a cause of the employment decision, the trier of fact may find that discrimination or retaliation was the true reason for the employer's action. *McDonnell Douglas Corp.*, 411 U.S. at 802-04; *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147-48 (2000).

      **B.    The prima facie case of discrimination is established.**

Defendant challenges Plaintiff's prima facie case of discrimination under *McDonnell-*

*Douglas*.  Only a minimal showing is required to establish a *prima facie* case.  "In establishing a *prima facie* case, [the plaintiff] need only make a minimal showing." *Bowen v. El Paso Electric Co.*, 49 S.W.3d 902, 908-09 (Tex.App.–El Paso 2001, pet. denied).  "The burden of establishing a *prima facie* case of disparate treatment is not onerous."  *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  "Only a minimal showing is necessary to meet this burden." *Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999).

Defendant lists the elements of the prima facie case as that the plaintiff is a member of a protected class, that she was qualified for her position, that she suffered an adverse employment action, and that others similarly situated were more favorably treated under nearly identical circumstances.  (Def. m.s.j. p. 10).  As to sex discrimination, Defendant challenges only the fourth element.  As to disability discrimination, it challenges the first and fourth elements.  The claim that Hernandez was not disabled is addressed in section II of this response, *supra*.  The evidence sufficiently raises a fact issue on the fourth element.

"The prima facie case is necessarily a flexible standard that must be adapted to the factual circumstances of the case," *Turner v. Kansas City S. Ry.*, 675 F.3d 887, 892 (5th Cir. 2012), and consequently, "there are various formulations of the [prima facie] test, most of which differ at the fourth element," *Heggemeier v. Caldwell Cty., Tex.*, 826 F.3d 861, 867 (5th Cir. 2016).  Contrary to Defendant's claim that Hernandez must prove different treatment under nearly identical circumstances, the usual way of proving the prima facie case is simply by showing that the plaintiff was replaced by a person outside of her protected class.  *See Kwong v. Am. Flood Research, Inc.*, 132 Fed.Appx. 18, 20 (5th Cir. 2005) (plaintiff "must usually show" that "the person selected as replacement was not within the protected class"); *Phillips v. TXU Corp.*, No. 3:03-CV-2736-B, 2005 WL 8157988, at *6 n. 6 (N.D. Tex. Aug. 31, 2005), *aff'd*, 194 Fed.Appx. 221 (5th Cir. 2006) ("The

fourth step of the prima facie case typically requires a showing that the plaintiff was replaced by someone outside the protected class[.]"); *Lacher v. West*, 147 F.Supp.2d 538, 542 (N.D. Tex. 2001) (stating the "typical" prima facie case "focuses on the identity of the person selected to replace the plaintiff.")

Thus, in *Palasota v. Haggar Clothing Co.*, the Fifth Circuit criticized the district court for requiring a plaintiff to prove disparate treatment at the prima facie stage, rather than allowing the prima facie case to be established by traditional means:

> Treating younger workers more favorably is not the only way to prove age discrimination.   A plaintiff must show that "(1) he was discharged;  (2) he was qualified for the position;  (3) he was within the protected class at the time of discharge;  and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) *otherwise discharged because of his age.*"
> . . . The district court observed that, though replacement by a younger worker was not a necessary component of Palasota's *prima facie* case, Palasota still "[a]t the end of the day ... has to compare himself to a younger worker under 'nearly identical' circumstances to show that he was treated 'disparately' because of his age."  This runs counter to *Reeves,* which holds that the establishment of a *prima facie* case and evidence casting doubt on the veracity of the employer's explanation is sufficient to find liability.

*Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 575-76 (5th Cir. 2003) (emphasis in original, citations omitted).

Replacement by a non-pregnant employee establishes a prima facie case of pregnancy discrimination.  *McLaughlin v. W & T Offshore, Inc.,* 78 Fed.Appx. 334, 338 (5th Cir. 2003) ("[A]lthough [plaintiff] was not replaced by a single person, her duties were delegated to two employees who were not pregnant. [Plaintiff] established a prima facie case of pregnancy discrimination.") Replacement by a non-disabled employee establishes a prima face case of disability discrimination.  *Hart v. City of Austin*, 2000 WL 1228633 at *4 (Tex. App.–Austin 2000, no pet.) (describing fourth element of prima facie case of disability discrimination as "he was replaced by or treated less favorably than non-disabled employees"); *Burch v. Coca-Cola Co.*, 119 F.3d 305, 320

(5th Cir. 1997) (listing fourth element as "he or she was replaced by a non-disabled person or was treated less favorably than non-disabled employees.")

When she was terminated, Hernandez was replaced by Andre Apperwhite, a non-disabled male. (Facts ¶ 37). This evidence establishes the prima facie case of discrimination. Defendant's motion for summary judgment should be denied.

**C.     The prima facie case of retaliation is established.**

Defendant also disputes the prima facie case of retaliation. As noted above, the prima facie case is a minimal burden. *Bauer*, 169 F.3d at 966. The elements of the prima facie case of retaliation are simply (1) the plaintiff engaged in protected activity; (2) the plaintiff suffered an adverse employment action; and (3) a causal link between the two. *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001).

Hernandez engaged in protected activity by repeatedly complaining of Rae's discrimination and retaliation. Hernandez went to Fernando Garcia, Empire Today's on-site human resources officer, and complained about Rae's discrimination, harassment, daily abuse, calling her to the office, and threatening to demote or terminate her. (Facts ¶ 21). Hernandez informed Garcia that Rae had commented to her about her miscarriages and not having children and therefore not having sympathy for her. (Facts ¶ 21). Hernandez told him that she believed she was being discriminated against because of her high-risk pregnancy and disability. (Facts ¶ 21). When Rae's conduct did not improve after multiple verbal complaints, Hernandez went back to Garcia and asked him to allow her to file an official written report against Rae for discrimination and retaliation. (Facts ¶ 23, 25). Thereafter, Hernandez repeatedly called and emailed Garcia to inquire about her complaint, but received no response. (Facts ¶ 25). Instead of dealing with Rae's misconduct, Garcia told Hernandez not to worry, and to calm down and ignore her. (Facts ¶ 22, 25). Indeed, after her

termination, Garcia apologized to Hernandez for failing to protect her from Rae.  (Facts ¶ 38).

It is undisputed, for purposes of summary judgment, that Hernandez engaged in protected conduct by complaining of Rae's discrimination and retaliation.  (Def. m.s.j. p. 17).  An employee's internal report is "protected activity" which an employer may not retaliate against the employee for taking. *Fierros v. Texas Dept. of Health*, 274 F.3d 187, 194 (5th Cir. 2001).  Opposition to discrimination also need not be in formal written form; informal verbal complaints constitute protected activity. *Tureaud v. Grambling State University*, 294 Fed.Appx. 909, 914 (5th Cir. 2008). Rae's complaints to Garcia establish the first element of the prima facie case of retaliation.

Hernandez also engaged in additional protected activity by requesting accommodation of her disability.  (Facts ¶ 5, 8, 26).  Requesting such an accommodation is also in itself protected activity; an employer may not retaliate against an employee for requesting accommodation of a disability. *Jones v. UPS*, 502 F.3d 1176, 1194 (10th Cir. 2007); *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 190-91 (3rd Cir. 2003); *Haley v. Tiger Trailers, Inc.*, 2018 WL 1722394, at *2 (E.D. Tex. 2018), *report and rec. adopted*, 2018 WL 1718559 (E.D. Tex. 2018) (collecting cases).  And contrary to Defendant's claim, it is insignificant whether Hernandez was actually entitled to that accommodation; "There is no requirement that a plaintiff must prevail on any underlying claim of intentional discrimination in order to prevail on a claim of retaliation."  *Vadie v. Mississippi State Univ.*, 218 F.3d 365, 374 n. 24 (5th Cir. 2000).  The first element of the prima facie case of retaliation is established.

Defendant also denies the third element of the prima facie case.  At the stage of demonstrating a prima facie case, the standard for showing a causal relationship between protected activity and an adverse employment action is "much less stringent" than a "but for" causation standard. *Fierros*, 274 F.3d at 191. A plaintiff may establish the prima facie case of retaliation by

showing that the protected activity and the adverse employment action were "not wholly unrelated." *Medina*, 238 F.3d at 684. A short lapse of time between a protected activity and an adverse employment action may by itself establish the prima facie case of retaliation. *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001). A "time lapse of up to four months has been found sufficient to satisfy the causal connection for summary judgment purposes." *Id*.

Hernandez complained of Rae and requested accommodations in March and April 2017, based on her disability and Rae's misconduct after becoming aware of her pregnancy. (Facts ¶ 5, 10, 11, 12, 21, 23, 25). Defendant terminated her in August 2017. (Facts ¶ 29; Def. m.s.j. p. 1). The temporal proximity alone is sufficient to raise fact issues for the jury on the third element of the prima facie case of retaliation. Additionally, Rae threatened Hernandez with discipline for complaining about her harassing conduct. (Facts ¶ 23). She told Hernandez that she did not want her to go to Garcia; and that if she did, she could be terminated for violating the "chain of command." (Facts ¶ 23). Shortly thereafter, Rae then issued several successive disciplinary actions to Hernandez. (Facts ¶ 24)). Based on the timing, the explicit threats of termination in response to protected conduct, and the discipline following immediately after protected conduct, the evidence easily raises fact issues as to whether Hernandez's protected conduct and the termination of her employment were "not wholly unrelated." The prima facie case of retaliation is established.

Since the evidence raises fact issues on the prima facie case, the analysis of the retaliation causes of action also moves to the pretext stage of the *McDonnell-Douglas* framework.

### D.    Defendant's stated reason for terminating Hernandez is pretextual, precluding summary judgment.

At the third stage of the *McDonnell-Douglas* analysis, if an employer states a legitimate, nondiscriminatory reason for its decision, the employee then has the opportunity to show that the employer's claimed reason for its decision is pretextual. As stated in *Reeves*:

> Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as affirmative evidence of guilt. Moreover, once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision. Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.

*Reeves*, 530 U.S. at 147-48 (citations and quote marks omitted). *See also Quantum Chemical Corp.*, 47 S.W.3d at 481-82 (under TCHRA, "Proving that the employer's stated reason for the firing is pretext is ordinarily sufficient to permit the trier of fact to find that the employer was actually motivated by discrimination.")

Evidence of pretext may take a variety of forms. *Robinson v. Jackson State Univ.*, 714 Fed.Appx. 354, 362 (5th Cir. 2017). It may be shown directly, by showing that a discriminatory reason more likely motivated the employer; or indirectly, by showing that the employer's proffered reason is unworthy of credence. *Burdine*, 450 U.S. at 256. "Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence that the employer did not act for the asserted non-discriminatory reasons." *Stennett v. Tupelo Pub. Sch. Dist.*, 619 Fed.Appx. 310, 317 (5th Cir. 2015).

The evidence raises fact issues for the jury on Defendant's attempts to justify the termination. Perhaps most significantly, HR representative Garcia admitted to Hernandez that she should not have been terminated. (Facts ¶ 38). He apologized for not protecting her from Rae in the past. (*Id.*). He admitted that Rae's actions were wrong. (*Id.*). He even stated that Rae had been terminated for the harassment. (*Id.*). From this admission alone, fact issues exist as to whether Defendant's claim that

it terminated Hernandez only for job abandonment is pretextual.

In addition to Garcia's admission, there is substantial other evidence raising fact issues for the jury regarding the reason for the termination. Defendant claims that Hernandez was terminated for "job abandonment" because she did not return to work after a 30-day leave period. However, Hernandez was told that her leave was approved for a longer period. (Facts ¶ 26-27). She called before the end of the approved leave period to schedule her return to work. (Facts ¶ 28). It was only then that she was told that her longer leave was actually disapproved, and she had already been terminated. (Facts ¶ 29). The jury may disbelieve Defendant's claimed reason for the termination.

Defendant claims that the decision to terminate was made only by Garcia, Villagrana, and LaManna, without Rae. However, Garcia told Hernandez that the decision was made by Rae. (Facts ¶ 31). Defendant concedes that Rae had to "sign off" on the termination. (Facts ¶ 34). This contradiction raises a fact question about the extent of her involvement in the decision, and whether Hernandez would have been terminated if Rae had not agreed to "sign off."

Moreover, although Defendant names Garcia as participating in the decision, when Hernandez called Garcia to schedule her return to work, Garcia initially told her that he looked forward to her return; and he then called her back to state that he made a mistake, and did not know she had already been terminated. (Facts ¶ 28, 29). He stated that he did not know why she had been terminated. (Facts ¶ 29). This testimony rebuts the claim that Garcia was involved in the decision to terminate her.

Additionally, Defendant's personnel change form documenting the termination includes check-boxes to indicate the "Reason for termination." (Facts ¶ 33). One of the check-boxes is for "Job Abandonment," but that box is not checked. (*Id*.). Instead, Defendant checked the box for "Other." (*Id*.). Defendant has provided no reason for this discrepancy.

Defendant's purported explanation for the termination is also contradicted by its decision to classify her as "non-rehirable." When Hernandez wanted to return to work, Garcia told her that Rae made the decision to classify her as non-rehirable. (Facts ¶ 31). This is consistent with the personnel change document, which indicates Hernandez is not eligible for rehire "Per Rita Rae." (Facts ¶ 35). Garcia did not know why, and said there was no reason she was non-rehirable. (Facts ¶ 31). Under Defendant's policy, failure to return to work when scheduled is "considered job abandonment and considered *voluntary* termination[.]" (Facts ¶ 35). The letters upon which Defendant relies – although they are disputed – also state that a failure by Hernandez to return to work would be considered "voluntary resignation." (*Id.*). Under Defendant's policy, employees are not eligible for rehire "if they were *involuntarily* separated due to poor performance or any type of policy misconduct." (*Id.*). Defendant provides no explanation for the decision to classify Hernandez as ineligible for rehire after a termination that was allegedly, under its own policy, a voluntary termination. An employer's departure from its own policies, including a gradual disciplinary policy, is also evidence of pretext, even when the policy is not mandatory. *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 354 & n. 29 (5th Cir. 2005).

Defendant also faults Hernandez for failing to provide information from her doctor about her medical condition while she was on leave. But Defendant's own summary-judgment evidence includes the statement, "We currently show that your physician has advised you will need to continue to be out from work until 8/21/17." (Facts ¶ 30).

Additionally, in analyzing the circumstantial evidence of discrimination, Rae's hostility and negative statements about Hernandez's pregnancy cannot be ignored. Defendant's attempt to minimize these comments as "stray remarks" relies on outdated jurisprudence. In *Reeves*, the Supreme Court rejected the argument that only those remarks that provided direct evidence of

discrimination were relevant.  The Court ruled that comments that the employee was "so old he must have come over on the Mayflower" and was "too damn old to do his job" should have been considered as evidence of age discrimination, even if not made in the context of the plaintiff's termination.  The Court reversed the Fifth Circuit for substituting its view of evidence for the jury's and disregarding this "critical evidence" of discrimination.  *Reeves*, 530 U.S. at 151-53.  The Fifth Circuit subsequently explained that even when a supervisor's biased comments are not uttered in the context of a particular employment decision, and therefore may not constitute direct evidence of discrimination, they are nonetheless relevant circumstantial evidence of discrimination which must be considered as part of the overall evidentiary mix.  *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 475 (5th Cir. 2015) (TCHRA case).

Rae made clear her hostility towards Hernandez's pregnancy.  She informed Hernandez from the outset that she had no sympathy for Hernandez's condition.  (Facts ¶ 6).  She initially refused Hernandez's request for the accommodation of time to visit her doctor.  (Facts ¶ 7).  She told Hernandez that a refusal to work overtime because of "child situations" would not be allowed. (Facts ¶ 13).  She suggested to Hernandez that she should resign to deal with her pregnancy, and stated that because of her pregnancy, Hernandez could not handle the position and it would be best if she quit.  (Facts ¶ 16). Coworkers also observed Rae's discrimination against and harassment of Hernandez because of her pregnancy.  (Facts ¶ 11).  This evidence clearly allows a reasonable trier of fact to infer that Rae harbored hostility towards Hernandez's pregnancy, and raises fact questions as to whether Hernandez's pregnancy was a motivating factor in Rae's decisions in connection with the termination and designation of Hernandez as non-rehirable.

Taken as a whole, the summary judgment evidence raises fact issues for the jury as to whether Defendant's claimed reason for terminating Hernandez was a pretext for discrimination and

retaliation.  Defendant's motion for summary judgment on the suit for discriminatory and retaliatory termination should be denied.

**V.      Defendant denied Hernandez a reasonable accommodation.**

The TCHRA requires employers to accommodate the disabilities of their employees:

It is an unlawful employment practice for a respondent covered under this chapter to fail or refuse to make a reasonable workplace accommodation to a known physical or mental limitation of an otherwise qualified individual with a disability who is an employee or applicant for employment, unless the respondent demonstrates that the accommodation would impose an undue hardship on the operation of the business of the respondent.

TEX.LAB.CODE § 21.128(a).  An employer's failure or refusal to accommodate the employee's disability itself constitutes disability discrimination in violation of the TCHRA.  *Davis v. City of Grapevine*, 188 S.W.3d 748, 758 (Tex.App.–Fort Worth 2006, pet. denied).  Once the employee identifies a disability and resulting limitations, the employer and employee should engage in flexible, interactive discussions to determine the appropriate accommodation.  *Hagood v. County of El Paso*, 408 S.W.3d 515, 525 (Tex.App.–El Paso 2013, no pet.).  The interactive process requires communication and good-faith exploration on the part of both the employer and the employee.  *Id.* When an employer does not engage in a good faith interactive process, that employer commits unlawful discrimination.  *Id.*

It is well-established that a leave of absence can be a reasonable accommodation for a disability.  *Moss v. Harris County Constable Precinct One*, 851 F.3d 413, 418 (5th Cir. 2017).  Defendant's policy provides that it will accommodate employees' pregnancy by providing leave.  (Facts ¶ 26).  Hernandez requested leave in order to have her child and return to work.  (Facts ¶ 26).  She was granted that leave.  (Facts ¶ 27).  However, she was then terminated before her scheduled return.  (Facts ¶ 29).  The evidence raises fact questions as to whether Defendant failed to reasonably accommodate Hernandez's condition when it terminated her employment instead of allowing her

18

leave to continue.  Defendant's motion for summary judgment should be denied.

**VI.    Defendant's untimely affirmative defenses do not justify dismissal of the negligence suit.**

Defendant seeks dismissal of Plaintiff's negligence suit based on two affirmative defenses. First, it argues the exclusive remedy of the Texas Workers' Compensation Act, Tex.Lab.Code § 408.001.  Under Texas law, this is an affirmative defense on which Defendant bears the burden of proof.  *Garza v. Exel Logistics, Inc.*, 161 S.W.3d 473, 475 n. 10 (Tex. 2005).  Second, it argues that Plaintiff's suit is preempted by her statutory remedy.  Ordinary preemption is also an affirmative defense.  *Harrill v. A.J.'s Wrecker Serv., Inc.*, 27 S.W.3d 191, 194 (Tex. App.—Dallas 2000, pet. dism'd w.o.j.).  Defendant did not plead either defense in its answer.  ECF No. 2-6; FED.R.CIV.P. 8(c) ("a party must affirmatively state any avoidance or affirmative defense").  All amended pleadings were due by January 20, 2020.  [ECF No. 12].  This Court has twice denied Defendant's motion to amend the scheduling order deadlines. [ECF No. 27, 32].  The Court should not allow Defendant to raise new defenses at this late date.  Summary judgment should be denied on the negligence suit.

For all of these reasons, Defendant's motion for summary judgment should be denied.

Respectfully submitted,

BRETT DUKE, P.C.
6350 Escondido Dr., Ste. A14
El Paso, Texas 79912
(915) 875-0003
(915) 875-0004 (facsimile)
brettduke@brettduke.com


*/s/ Brett Duke*
Brett Duke
Texas Bar No. 24012559


And

LAW FIRM OF DANIELA LABINOTI, P.C.
707 Myrtle
El Paso, Texas 79901
(915) 581-4600
(915) 581-4605
Daniela@LabinotiLaw.com


*/s/ Daniela Labinoti*
DANIELA LABINOTI
Texas Bar No. 24050900

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing with the clerk using the CM/ECF system, which will send notification of such filing to all counsel.


*/s/ Brett Duke*
Brett Duke